JOURNAL ENTRY AND OPINION
{¶ 1} The state appeals from a court order finding that certain statements by a nontestifying victim in a domestic violence prosecution were not excited utterances and were testimonial in nature and thus violative of defendant James McKenzie's right to confrontation as defined in Crawford v.Washington (2004), 541 U.S. 36.
 I {¶ 2} The Sixth Amendment to the United States Constitution guarantees that the accused has the right to confront and cross-examine witnesses testifying against him. Pointer v.Texas (1965), 380 U.S. 400, 406. Ohio's analogue to the Confrontation Clause is Section 10, Article I of the Ohio Constitution. That section provides, "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *." Although the "face to face" language of the Ohio Constitution would arguably appear to grant even greater rights to confrontation, the Ohio Supreme Court has construed Section 10, Article I, to parallel that of the federal constitution, rejecting the argument that the section requires an interpretation at its literal extreme. See State v. Self
(1990), 56 Ohio St.3d 73, 78-79.
 {¶ 3} Before Crawford, hearsay statements were admissible against a defendant, notwithstanding the Confrontation Clause, if the statements bore sufficient "indicia of reliability." SeeOhio v. Roberts (1980), 448 U.S. 56, 66. In some circumstances, the supreme court deemed hearsay statements like excited utterances as so "firmly rooted" as exceptions to the hearsay rule that they were per se reliable. See White v. Illinois
(1992), 502 U.S. 346, 355, fn.8.
 {¶ 4} In Crawford, the supreme court shifted the focus of its Confrontation Clause analysis from the Roberts "adequate indicia of reliability" test to one which considered whether the out of court statement was "testimonial" in nature. The supreme court held that testimonial hearsay is admissible against a criminal defendant under the Confrontation Clause only if the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. The supreme court extensively reviewed the historical origins of the clause, concluding that the clause's primary concern is "testimonial hearsay," that its ultimate goal is to ensure the reliability of evidence, and that it demands that such reliability be ascertained through a particular procedure: "by testing in the crucible of cross-examination." Id. at 53, 61. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 69.
 {¶ 5} The supreme court declined to give a comprehensive definition of "testimonial" but explained that it used the term in "its colloquial, rather than any technical legal sense." Id. at 53, fn.4, 68. These testimonial statements non-exhaustively included testimony at preliminary hearings, before grand juries, and at former trials, as well as statements elicited during police interrogations. Id. at 51. In addition, the supreme court identified three kinds of statements that might also be regarded as testimonial: (1) "ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51.
 {¶ 6} The supreme court further considered the meaning of the term "testimonial" in Davis v. Washington (2006), ___ U.S. ___,126 S.Ct. 2266. In Davis, the supreme court held that the Confrontation Clause of the United States Constitution applies only to testimonial hearsay and not to statements made "to enable police assistance to meet an ongoing emergency."126 S.Ct. at 2277. Davis' victim had made a "911" emergency telephone call, and in the course of that call incriminated Davis. The supreme court affirmed the trial court's decision to admit the statements, holding that:
 {¶ 7} "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." Id. at 2273-2274.
 {¶ 8} The supreme court distinguished Davis from Crawford
by noting that the nature of the questions in Davis elicited answers that were necessary to be able to resolve the ongoing emergency. Davis, 126 S.Ct. at 2276. "That is true even of the operator's effort to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon." Id.
 II {¶ 9} The state charged McKenzie with one count of domestic violence. The victim refused to testify against McKenzie and an arrest warrant could not be executed against her. The state nonetheless indicated its desire to go forward with the prosecution, choosing to have the arresting officer testify to statements made by the victim during the incident.
 {¶ 10} The court convened a hearing for the purpose of determining whether the admission of the victim's statements through the officer's testimony would violate McKenzie's right to confrontation.
 {¶ 11} The officer testified that he had been responding to a very early morning call (apparently unrelated to this incident) and observed McKenzie walking down the street. The officer then saw the victim run out of an apartment door, waving her arms and yelling, "that's him, that's him. He's the one that just hit me."
 {¶ 12} The officer exited his vehicle and approached McKenzie. McKenzie said, "all we was doing is arguing." The officer put McKenzie in the police car and "drove across the street to conduct a further interview with [the victim]." The officer noted the victim had a two-inch "swollen knot right in the middle of her forehead." The victim told the officer that she and McKenzie had an argument and that he grabbed her, threw her on the bed and began to choke her. He struck her several times with a closed fist and took his thumb and dug it into her eye socket, as though trying to pop the eyeball out. The officer testified that in addition to the knot on her head, the victim's eye had nearly swollen shut.
 {¶ 13} In response to specific questions by McKenzie's counsel, the officer agreed that the victim had been in no immediate danger from McKenzie at the time he spoke with her — McKenzie had been placed in the police car and remained there while the officer spoke with the victim. The officer also agreed that the victim initially called out to him because she wanted McKenzie arrested. He said that "after the initial contact was made I conducted an interview with her as to how she sustained her injuries. And that's when she told me what happened inside the apartment."
 {¶ 14} The court held that the victim's statement "that's him, that's him. He's the one that just hit me" was not an excited utterance under Evid.R. 803(2). The court also held that the statement was "testimonial" because the statements were directed at the police officer, they were accusatory toward McKenzie and they were not made at a time when the victim was in immediate peril. The court therefore concluded that the statements would lead an objective witness to reasonably believe that they would be used at a later trial. In light of these conclusions, the court held that the introduction of the statements through the police officer would violate McKenzie's right to confrontation.
 III {¶ 15} The victim's statements to the arresting officer were in two parts. The first part occurred when she ran out into the street, pointing toward McKenzie, and yelling at the officer, "that's him, that's him. He's the one that just hit me." The second part occurred after the officer secured McKenzie in the police car and questioned the victim about what happened, taking details of the alleged attack. We analyze these in turn.
 A {¶ 16} We disagree with the court's conclusion that the victim's statement, "that's him, that's him. He's the one that just hit me" was testimonial in nature. The victim's statement, taken in context, was made in the midst of an ongoing emergency and not for testimonial purposes.
 {¶ 17} The officer's testimony showed that his presence at the scene had been serendipitous because he was answering another call. When he saw the victim, she had been running out of the apartment and calling for police assistance. She did this for the purpose of having McKenzie apprehended, not for purposes of a later prosecution. These facts objectively indicate that the victim's primary purpose in calling was to alert the officer to an ongoing emergency.
 {¶ 18} In oral remarks made at the close of the hearing, the court conceded that the victim's statements were made in a "hysterical state of mind." Nevertheless, the court found that the police officer was the only person on the street other than McKenzie, so the victim's statements about McKenzie "rise to the level of an accusation."
 {¶ 19} The facts here are not functionally different than those in Davis, where the caller made statements in the course of a 9-1-1 emergency telephone call. Instead of using a telephone to report an emergency, the victim here reported the crime in person to a law enforcement officer. In both Davis and this case, the purpose in seeking police assistance was to meet an ongoing emergency — one was a telephone call for assistance; the other, a verbal request to a police officer for assistance.
 {¶ 20} The court did not have the benefit of the Davis
decision at the time it made its ruling. Its conclusion that the victim's statement could be used later at trial against McKenzie was arguably a correct application of Crawford. However, asDavis now shows, statements made in the course of an ongoing emergency, while certainly admissible as evidence during a trial resulting from events forming the foundation of the emergency call, are not made for the primary purpose of being used at a trial of the accused. Instead, they are made primarily for emergency assistance and hence are not testimonial in nature.
 {¶ 21} The court acknowledged this point, in a way, by stating at the hearing that "they were statements again calling attention to the defendant and calling attention to the fact that a crime has just been committed." Perhaps there was an element of accusation in the statement, but any identification is accusatory in nature. One cannot alert the police to the presence of a perpetrator of a crime without being accusatory. That fact alone does not render the statement testimonial. By the court's own reckoning, the victim was still in a "hysterical state of mind" at the time she flagged down the officer. We find her identification of McKenzie as the perpetrator of an ongoing altercation was primarily intended for police assistance.
 B {¶ 22} We agree with the court that any statements the victim made after McKenzie had been secured in the police car were testimonial in nature.
 {¶ 23} The evidence showed that any need to meet an existing or an ongoing emergency had passed. The officer agreed that once McKenzie had been detained in the police car, and before he spoke with the victim, McKenzie posed no immediate threat to the victim. When the officer did speak with the victim, he did so to interview her for the purpose of determining whether a crime had been committed. During this interview, he asked her how she sustained her injuries. He also said that he asked one or two follow-up questions, and that "she did actually complete a written, voluntary statement, too, on scene." The victim completed this statement while leaning up against the police car.
 {¶ 24} With McKenzie safely ensconced in the police car, the ongoing emergency ended. Any further remarks by the victim were obviously intended for prosecution, not just apprehension or the cessation of the emergency. This point is borne out by the officer's testimony that he took a statement from the victim. Undoubtedly, this statement was intended for prosecution and thus testimonial in nature.
 C {¶ 25} Our conclusion that the victim's statement "that's him, that's him. He's the one that just hit me" is not testimonial does not end our analysis. In United States v.Thomas (C.A.7, 2006), 453 F.3d 838, 844, the Seventh Circuit Court of Appeals stated:
 {¶ 26} "Where a hearsay statement is found to be nontestimonial, we continue to evaluate the declaration underOhio v. Roberts, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597
(1980). See Crawford, 541 U.S. at 68 (reasoning that `[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether'); see also United States v. Danford,435 F.3d 682, 687 (7th Cir. 2005). Roberts held that proffered hearsay may be admitted where it "falls within a firmly rooted hearsay exception." 448 U.S. at 66; see White v. Illinois,502 U.S. 346, 356-57, 112 S. Ct. 736, 116 L.Ed.2d 848 (1992).
 {¶ 27} We therefore consider whether the court abused its discretion by concluding that the statement was not an excited utterance under Evid.R. 803(2). State v. Duncan (1978),53 Ohio St.2d 215, 219.
 {¶ 28} Evid.R. 803(2) defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 29} For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. See State v. Brown (1996), 112 Ohio App.3d 583, 601.
 {¶ 30} In remarks it made during the hearing, the court appeared to acknowledge, in the absence of express findings, that the evidence showed all of the factors for finding an excited utterance under Evid.R. 803(2) were present. For example, the court stated that the victim had been "in a hysterical state of mind" and "mentally, she was excited." It further agreed there had been a short period of time between the alleged event and the declaration. Although it did not say so explicitly, we believe it safe to assume that the victim's injuries were significant enough to establish that assault amounted to a "startling event," and her injuries provided conclusive proof that she had witnessed the startling event.
 {¶ 31} The court appeared concerned, however, with the victim's motivation for making her statements. The court found that the victim would have known she was making her statement to a police officer, in the form of an accusation, thus making it testimonial in nature.
 {¶ 32} With all respect to the court, its conclusions coming without the benefit of Davis inappropriately mixed the different legal standards for the Confrontation Clause analysis with that of an excited utterance. By its very nature, an excited utterance will have the tendency to be used for the truth of the matter asserted. This does not make it testimonial for Confrontation Clause analysis, even though it might be used as evidence in a trial. The temporal nexus between the startling event and utterance is thought to preclude reflective thought and thus ensure the kind of spontaneity that makes fabrication unlikely, if not possible. In contrast, a statement that is testimonial in nature is elicited for the purpose of prosecution; for example, a police interview or witness statement. The difference here is that the excited utterance is made organically, without thought or reflection, which might call into question its trustworthiness.
 {¶ 33} The facts bear our analysis out. The victim did not call the police. Instead, she exited the house in a hysterical state, obviously injured, and identifying the assailant. There was no prompting by the police officer or invitation to speak or describe the events that had just occurred. Once the officer secured McKenzie and removed any threat of harm to the victim, he then asked her a series of questions which would have permitted her to reflect on the alleged assault. At this point, the victim's statements became testimonial because the officer admittedly engaged in an investigation to determine whether a crime had been committed.
 {¶ 34} It makes no difference that the excited utterance had been made to a police officer under circumstances in which it might be expected that the statement would be used as evidence in a later prosecution. The Confrontation Clause analysis is concerned with the reasons why the statement is made. Here, the victim's excited utterance had been intended to apprehend the alleged perpetrator during the commission of a crime. This is so similar to the 9-1-1 emergency telephone call in Davis that we find the facts functionally identical.
 {¶ 35} Because the victim was admittedly under the influence of a startling event, her statement was made organically. It had the requisite guarantees of trustworthiness. Its use as evidence at trial is immaterial for Confrontation Clause analysis.
 IV {¶ 36} In summary, we hold that the victim's statement "that's him, that's him. He's the one that just hit me." was an excited utterance and nontestimonial in nature. The court abused its discretion by finding the admission of that statement would have violated the Confrontation Clause. The court did not abuse its discretion by finding any of the statements made by the victim after McKenzie had been secured in the police car to be testimonial in nature.
 {¶ 37} This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Kilbane, J., concur.