OPINION
{¶ 1} Appellant, Charles L. Garrison ("appellant"), filed the instant appeal from the Franklin County Court of Common Pleas seeking review of his conviction and sentence in this case.
 {¶ 2} The facts relevant to the appeal are as follows. Until a short time prior to April 8, 2004, appellant and an associate, Anthony Pannell ("Pannell"), were operating a crack house in the house located at 109 Rodgers Avenue in Columbus. Lisa Powell ("Powell"), who lived in the house, alerted Columbus police and a raid was conducted. When appellant and Pannell abandoned the house after the raid, operation of the house as a crack house was taken over by Stuart J. Bell, commonly known as Little John Bell ("Bell").
 {¶ 3} In the early morning hours of April 8, 2004, Bell was present in the house with a number of people, including Powell, Robert Wheeler ("Wheeler"), Cynthia McCloud ("McCloud"), and Nicole Solis ("Solis"). With the exception of McCloud, all those present in the house were or had been smoking crack and/or marijuana. During this time, Bell had a phone conversation with someone Powell identified as appellant. The tone of the conversation was characterized as angry.
 {¶ 4} At around 2:00 a.m., the door to the house was kicked in. Wheeler and Solis fled the front room of the house into the back bedrooms, leaving Bell and McCloud in the front room. Three people entered the house, yelling that they were with SWAT, and a number of gunshots were fired. The three yelled "Checking your shit," "Checking your money," and "Checking your dope," which was taken by most of those present in the house as an indication that they were being robbed of any money and drugs in the house.
 {¶ 5} The three men were identified as appellant, Pannell, and Chaz Robertson ("Robertson"). There was conflicting testimony regarding whether the men wore masks. McCloud and Solis both testified that they were, although Solis stated that she recognized appellant and Pannell. Pannell testified that they were not wearing masks. Powell testified that she saw appellant and Pannell's faces as they followed Solis through the dining room of the house into one of the back bedrooms, and also testified that she recognized their voices. Wheeler did not see any of the three men, as he was hiding under a mattress after fleeing the front room, but stated that he recognized appellant and Pannell's voices.
 {¶ 6} After following Solis into the back bedroom, appellant and Pannell beat her. They then returned to the front room, where Pannell testified appellant shot Bell. Pannell also testified that appellant ordered Robertson to shoot Bell, and he believed Robertson filed one or more shots at Bell, but could not be certain that any of the shots struck him. The three then left the house on Rodgers Avenue and went to a crack house located on Schultz Avenue that appellant operated. Scott Harding ("Harding") was present in the Schultz Avenue house when the three arrived there. Harding testified that appellant stated at that time that "I shot him, I killed him, I shot him," but did not identify who he had shot and killed.
 {¶ 7} In response to an emergency call, Columbus Police Officer John Cheatham arrived at the Rodgers Avenue house and found Bell lying face down on the front porch. Bell was transported to the hospital, where he was pronounced dead. The cause of death was a single gunshot wound to the chest that had penetrated Bell's heart.
 {¶ 8} During a search of the house, Officer Cheatham discovered Solis unconscious in the closet of the back bedroom. Upon being revived, Solis repeated the names "Mendoza," "Flip," and "Ant." "Mendoza" is appellant's nickname. Pannell is known as both "Flip" and "Ant."
 {¶ 9} During their investigation, police located a number of handgun shell casings and expended bullet and bullet fragments in the front room. The shell casings, bullets, and bullet fragments were all consistent with a .25 caliber weapon. The bullet that was removed from Bell's body was from a .22 caliber weapon. Powell testified that she saw appellant carrying a revolver during the incident, which would not have left any shell casings at the crime scene.
 {¶ 10} Appellant was indicted for two counts of aggravated murder with capital specifications, one count of aggravated robbery, one count of aggravated burglary, one count of receiving stolen property, and one count of having a weapon while under a disability. The aggravated murder charges, the aggravated robbery charge, and the aggravated burglary charge all carried firearm specifications. The charges of receiving stolen property and having a weapon while under a disability were severed from the other counts, and this matter proceeded to a jury trial.
 {¶ 11} The jury acquitted appellant of the charges of aggravated murder, but convicted him of the lesser-included offenses of murder on each of the two counts. The jury also convicted appellant on the aggravated robbery and aggravated burglary counts. At sentencing, the trial court merged the two murder counts and sentenced appellant to a sentence of 15-years to life. The court sentenced appellant to ten years each on the aggravated robbery and aggravated burglary charges, with those sentences to be served concurrently with each other, but consecutive to the sentence on the murder charges. The court also sentenced appellant to a three-year term on each of the firearm specifications, but merged these into a single three-year term.
 {¶ 12} Appellant filed this appeal, alleging four assignments of error:
 {¶ 13} ASSIGNMENT OF ERROR I
Appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
ASSIGNMENT OF ERROR II
The trial court commits reversible error for giving maximum consecutive sentences when there were no facts proven beyond a reasonable doubt to the jury to support giving maximum consecutive sentences.
ASSIGNMENT OF ERROR III
The trial court commits reversible error when it permits a police officer to testify to statements of an alleged victim, when said statements were testimonial in nature and were not subject to cross examination at the time they were made, in violation of Appellant's right of confrontation under the state and federal constitutions.
ASSIGNMENT OF ERROR IV
The trial court commits reversible error by allowing an incompetent person to testify.
 {¶ 14} For ease of discussion, we will address these assignments of error out of order. In his third assignment of error, appellant argues that the trial court erred by allowing Officer Cheatham to testify regarding Solis' repetition of the names "Mendoza," "Flip," and "Ant" as she recovered consciousness after being found in the closet of the bedroom. Appellant argues that the statement was testimonial in nature and that there was no opportunity to cross-examine Solis at the time the statement was made. Therefore, appellant claims that admission of testimony regarding the statement violated appellant's right of confrontation under the Ohio and United States Constitutions.
 {¶ 15} Appellant relies on Crawford v. Washington (2004),541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, in which the United States Supreme Court held that the Confrontation Clause of the United States Constitution bars admission of testimonial statements of a witness who does not appear at trial unless the witness was unable to testify, and the defendant had a prior opportunity to cross-examine the witness regarding the subject matter of the statements. The Supreme Court has since provided further guidance on the question of whether a statement is testimonial in nature in Davis v. Washington (2006), ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224. In that case, the court held that statements made during police "interrogations"[1]
are non-testimonial when they are made "under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency" and are testimonial when "the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at paragraph one of the syllabus.
 {¶ 16} We find that under the circumstances, Solis' statement was not testimonial in nature. When Officer Cheatham found Solis, she was recovering consciousness after having been beaten. In fact, according to the testimony, Solis did not give the names in response to any questioning by Officer Cheatham, but was simply repeating the names over and over after regaining consciousness. Thus, the primary purpose for the communication between Solis and Officer Cheatham was related to the emergency situation that existed. Furthermore, even if the statements by Solis could be considered testimonial in nature, as events actually occurred in trial, Solis did appear and testify, thus providing appellant with the opportunity to cross-examine her regarding the statement, which would have negated any issue with the confrontation clause.
 {¶ 17} Having determined that Solis' statement was not testimonial in nature, it is also necessary to determine whether her statements constituted inadmissible hearsay testimony. SeeState v. McKenzie (Nov. 2, 2006), Cuyahoga App. No. 87610,2006-Ohio-5725. The trial court admitted the statements as excited utterances under Evid.R. 803(2). In order to admit a statement as an excited utterance, four elements must be satisfied: (1) an event startling enough to create nervous excitement in the declarant, (2) the statement must be made while the declarant was still in a state of excitement created by the startling event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the event. Id. at ¶ 29.
 {¶ 18} In this case, Solis' repetition of the names "Mendoza," "Flip," and "Ant" occurred as she recovered consciousness after being beaten. Being beaten would qualify as a startling event. The statements were made while Solis was still under the stress of excitement created by that event and the statement related to the event. Therefore, we conclude that Solis' statements were properly admitted pursuant to Evid.R. 803(2). Consequently, we overrule appellant's third assignment of error.
 {¶ 19} In his fourth assignment of error, appellant argues that it was reversible error for the trial court to allow Solis to testify because the court should have found her incompetent to testify. Solis was initially brought to the courtroom in the morning of March 17, 2005, after she had been arrested the previous night. At that point, the trial court did not allow her to testify because of questions about her mental and physical condition. In the afternoon of March 17, 2005, Solis was brought back to the courtroom and was allowed to testify without objection as to her competency.
 {¶ 20} Appellant's failure to raise any objection regarding Solis' testimony waived all but plain error. State v. Slagle
(1992) 65 Ohio St.3d 597, 605 N.E.2d 916. Under Evid.R. 601, all persons are generally presumed to be competent witnesses, with some exceptions, including "those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A). Appellant essentially argues that the trial court, having refused to allow Solis to testify during the morning court session due to concerns regarding her physical and mental condition, was required to establish her competency before allowing her to testify during the afternoon session.
 {¶ 21} We do not believe Evid.R. 601 required the trial court to engage in the inquiry appellant argues should have occurred. The trial court was in a position to decide whether there were any concerns regarding Solis' ability to testify, as demonstrated by the fact that the court refused to allow Solis to testify during the morning session. Presumably, had the trial court continued to have reservations regarding Solis' physical and mental condition, the court would have taken additional steps, as it had during the morning session.
 {¶ 22} Furthermore, a review of Solis' testimony shows no indications that Solis was experiencing any physical or mental condition that should have called into question her competency to testify. She actively responded to questions raised by both the prosecution and defense, and there are no signs that she was experiencing any difficulty in understanding any of the questions.
 {¶ 23} We find no plain error in the trial court's decision to allow Solis' testimony. Consequently, we overrule appellant's fourth assignment of error.
 {¶ 24} In his first assignment of error, appellant argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. As set forth inState v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, when reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at ¶ 2 of the syllabus. See, also, Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 25} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 26} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, at ¶ 1 of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 27} Appellant argues that most of the witnesses present in the house at 109 Rodgers Avenue during the incident lacked credibility because they were under the influence of drugs at the time. He also argues that some of the witnesses were motivated to lie in order to obtain favorable treatment in their own criminal cases. Finally, appellant argues that some of the witnesses gave statements at different times that were inconsistent with each other, and therefore should not be treated as credible.
 {¶ 28} Wheeler, Powell, and Solis all testified that they had been using drugs during the early morning hours of April 8, 2004, and there are some inconsistencies in their testimony, such as the question of whether the assailants who entered the house were wearing masks. However, in general, the stories each of these witnesses told did support each other, and were consistent with the testimony of McCloud, who was not using drugs prior to the incident. Powell and Solis both testified that they recognized appellant, and Wheeler testified that he recognized appellant's voice. The stories were also consistent on other details such as the manner of entry and the assailants yelling "Checking your shit," "Checking your dope," and "Checking your money" as they entered.
 {¶ 29} Pannell, an accomplice, provided testimony after he pled guilty to two first-degree felonies, but the trial court gave the jury a proper instruction regarding accomplice testimony. Some question was raised at the trial court to the effect that Scott Harding was motivated to testify that appellant said, "I shot him, I killed him, I shot him," after he arrived at the crack house on Schultz Avenue because Harding was seeking favorable treatment on a criminal charge he had pending.
 {¶ 30} When questioned, Powell initially told police she was not able to identify the assailants and that she did not know anything about what had occurred. During a subsequent interview, upon being told Bell had died, she changed her initial statement and identified the assailants, including appellant. She testified that her statement changed because "[a]fter I heard John was dead, then I knew I had to tell the truth." (Tr. at 495.)
 {¶ 31} A defendant is not entitled to a reversal based on the grounds of manifest weight of the evidence merely because inconsistent evidence was presented at trial. See State v.Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is in the best position to observe the manner and demeanor of the witnesses, to consider any inconsistencies in the testimony, and to decide whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503. Consequently, while an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires a reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037.
 {¶ 32} After careful review of all the evidence, we conclude that the jury was presented with evidence sufficient to support a verdict of guilty on the offenses of murder, aggravated robbery, and aggravated burglary. Furthermore, we cannot say based on the record before us that the evidence weighs heavily against the convictions or that the jury clearly lost its way. Therefore, we overrule appellant's first assignment of error.
 {¶ 33} In his second assignment of error, appellant argues that the trial court erred when it sentenced him to maximum consecutive sentences based on facts that were not proven to a jury beyond a reasonable doubt. Since oral argument, the Ohio Supreme Court has decided State v. Foster (2006),109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, in which the court held that certain parts of the Ohio criminal sentencing law, including those relating to imposition of maximum consecutive sentences, are unconstitutional in light of the decision rendered by the United States Supreme Court in Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Under the authority of Foster, we are required to remand this case for resentencing. See Foster, supra, at ¶ 104, State v. Harper,
Franklin App. No. 05AP-907, 2006-Ohio-1653. Therefore, appellant's second assignment of error is sustained.
 {¶ 34} Having overruled appellant's first, third, and fourth assignments of error, and sustained appellant's second assignment of error, the Franklin County Court of Common Pleas is affirmed in part and reversed in part. We hereby remand this case to the Franklin County Court of Common Pleas for proceedings consistent with this opinion.
Judgment affirmed in part; reversed in part and causeremanded.
Bryant and French, JJ., concur.
[1] "Interrogations" for purposes of the Confrontation Clause analysis include a variety of types of contact with the police, including 911 calls, etc.