JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Claude Davis ("Davis"), appeals his conviction for having a weapon under disability. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Davis was charged in a fifteen-count indictment with felonious assault, kidnapping, improperly discharging a firearm into a habitation, and having a weapon while under disability. The felonious assault and kidnapping charges were accompanied by one-, three-, and five-year firearm specifications. The matter proceeded to a jury trial, at which the jurors were discharged because they were unable to reach a verdict. In July 2006, Davis was retried. At this trial, Davis chose to bifurcate the having a weapon-under-disability count and try it to the bench.
 {¶ 3} The following evidence was presented at trial.
 {¶ 4} On July 31, 2005, Darin Suggs ("Suggs") was shot in the stomach while standing in his bedroom doorway. Suggs lived with a friend, Rhonda Hillman ("Hillman"), and her four children.
 {¶ 5} Earlier that evening, Hillman and her children were at Jeanell Haywood's ("Haywood") residence. At some point that evening, Davis arrived and argued with Haywood. Hillman observed Davis slap, punch, and choke Haywood and heard him threaten to destroy Haywood's car with everyone in it. Hillman called Suggs for a ride home because she was concerned for the safety of her children.
 {¶ 6} Suggs picked up Hillman and the children. They drove to a nearby gas station and called police. They waited about an hour, keeping an eye on Haywood's *Page 4 
apartment and waiting for the police. Eventually, they returned to Suggs' house, where they discovered Haywood. She was distraught and had a rope burn around her neck and a shoeprint on her face. Davis was standing on the street corner shouting.
 {¶ 7} Hillman and Suggs took the children upstairs to put them to bed. Haywood also went upstairs, upset and trying to decide whether to go to the hospital. Hillman, Haywood, and Suggs heard Haywood's car drive past the house. Haywood owned a 1988 vehicle which was recognizable by its loud muffler. Suggs and Hillman testified that they were familiar with the distinctive sound of Haywood's car.
 {¶ 8} Hillman and Haywood looked out the bedroom window and observed Davis drive Haywood's car past the house. A moment later, Hillman and Suggs heard Haywood's car again. Before they reached the window, five shots were fired at the house. Suggs was shot in the stomach, and one of the children was nearly shot.
 {¶ 9} The police arrived, and Hillman and Suggs told the officers that Davis had shot Suggs, although both admitted at trial that they did not see the gunman. Haywood, who did not testify at trial, told the police that Davis had a gun that evening. After the police and ambulance left, Davis returned to the house, banging on the door. Haywood left with Davis. *Page 5 
 {¶ 10} The next day, police arrested Davis at Haywood's apartment. The police seized Haywood's car and processed it for evidence. Traces of gunshot residue were found on the inside of the passenger door frame. The detective's theory was that Davis had driven by Suggs' house, leaned across the passenger seat to fire his gun, thereby leaving gunpowder residue on the passenger door.
 {¶ 11} Davis' brother and his girlfriend both testified that Davis was at their house on the evening of July 31, 2005.
 {¶ 12} The jury acquitted Davis of all charges. The trial court, however, found him guilty of having a weapon while under disability and sentenced him to two years in prison.
 {¶ 13} Davis appeals his conviction, raising three assignments of error.
 Hearsay Statement {¶ 14} In the first assignment of error, Davis argues that his rights to due process and confrontation were violated when Haywood's statement was introduced at trial.
 {¶ 15} During the trial, one of the responding police officers testified that he spoke to Hillman and Haywood at the scene. He testified that when he first arrived, Haywood was jumping, shaking, and screaming. He testified that she was hyperventilating, crying, and could barely speak. Haywood told the officer that Davis had shot Suggs. When the prosecutor asked him at trial, "Did she [Haywood] indicate to you whether or not Mr. Davis had a weapon during this scenario," the *Page 6 
officer responded "Yes, she said he had a gun." No objection was made to this testimony.
 {¶ 16} First, we note that where no objection is raised to the admission of alleged hearsay testimony, it may be considered by the trier of fact for whatever probative value it may have. Dudukovich v.Lorain Metropolitan Housing Authority (1979), 58 Ohio St.2d 202, 208, 12 Ohio Op.3d 198, 389 N.E.2d 1113, citing State v. Petro (1947),148 Ohio St. 473, 76 N.E.2d 355, paragraph eight of the syllabus. Moreover, the failure to interpose a timely objection at a time when the trial court can correct an error constitutes a waiver of any objection to the admissibility of evidence. Nevertheless, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Thus, we review the admission of the alleged hearsay statement under the plain error standard of Crim.R. 52(B).
 {¶ 17} Plain error consists of an obvious error or defect in the trial proceeding that affects a substantial right. Crim.R. 52(B). The Ohio Supreme Court has stated that for a reviewing court to find plain error, the court must find error, the error must be plain, which means an obvious defect in trial proceedings, and the error must have affected the defendant's substantial rights. State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68, 759 N.E.2d 1240. Plain error must be obvious as well as outcome-determinative. Barnes, supra at 28, citing State v.Sanders, 92 Ohio St.3d 245, 2001-Ohio-189, 750 N.E.2d 90. Therefore, plain error occurs only when, but for *Page 7 
the error, the outcome of the trial clearly would have been different.State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; State v.Hill, 92 Ohio St.3d 191, 203, 2001-Ohio-141, 749 N.E.2d 274.
 {¶ 18} Davis argues that the trial court committed plain error because Haywood's statement was testimonial, and thus violated the Confrontation Clause. In Crawford v. Washington (2004), 541 U.S. 36, 68,124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that the Confrontation Clause encompasses "testimonial" as opposed to nontestimonial evidence. Although the Court did not define "testimonial," the court discussed three possible definitions of that term, which include: (1) ex parte in-court testimony or its functional equivalent, such as affidavits and prior testimony that the defendant was unable to cross-examine, or pretrial statements that declarants would reasonably be expected to be used in a prosecution; (2) extra-judicial statements contained in formal testimonial materials such as depositions, prior testimony or confessions; and (3) statements made under circumstances which would lead an objective witness to believe the statement would be available for use at a later trial. Id. at 51-52.
 {¶ 19} In the instant case, Davis argues that Haywood's statement to the police was made during the investigation into the shooting and, thus, was made under circumstances which would lead an objective witness to believe the statement would be available for use later at trial. *Page 8 
 {¶ 20} Davis' claim that the trial court committed plain error fails for two reasons. First, Haywood's statement to the police does not fall within Crawford because the statement was nontestimonial. Second, we find her statement was properly admitted into evidence because it falls under a well established exception to the hearsay rule.
 {¶ 21} In Davis v. Washington (2006), U.S., 126 S.Ct. 2266,165 L. Ed.2d 224, the United States Supreme Court further considered the meaning of the term "testimonial." The Court found that the Confrontation Clause applies only to testimonial hearsay and not to statements made "to enable police assistance to meet an ongoing emergency." Id. at 2277. In Davis, the victim had made a 911 emergency call, and in the course of that call incriminated the defendant. The Supreme Court, in affirming the lower court's admission of the statements, held that:
 "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." Id. at 2273-2274. *Page 9 
 {¶ 22} The Court distinguished Davis from Crawford by noting that the nature of the questions in Davis elicited answers from the victim necessary to enable the police to resolve the ongoing emergency. Id. at 2276.
 {¶ 23} To determine "whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." State v. Stahl, 111 Ohio St.3d 186, 192, 2006-Ohio-5482,855 N.E.2d 834, at paragraph two of the syllabus.
 {¶ 24} In the instant case, the responding officer testified that when he first arrived at the scene, Haywood "was outside the house shaking, jumping, screaming, directing us to make sure we pulled up to the right house and didn't drive by it. Crying, sobbing, she really could barely speak." Haywood immediately told the officer that Davis had shot her friend and that "she was the victim of several other crimes in relation to the whole scenario." It is unclear from the record whether Haywood, unprompted, told the officer that Davis had a gun, or whether she responded to a question posed by the officer. In either case, we find that she told the officer what had happened for the purpose of meeting an ongoing emergency, and not for purposes of a later prosecution. SeeState v. McKenzie, Cuyahoga App. No. 87610, 2006-Ohio-5725. Haywood's statements to the officer indicate that the primary purpose of her statement was to enable the police to respond to an ongoing *Page 10 
emergency, not to establish or prove events potentially relevant to a criminal prosecution. See State v. Brown, Cuyahoga App. No. 87651,2006-Ohio-6267.
 {¶ 25} This court recently reached a similar result in Brown, supra, in which police observed an injured man when they responded to an assault dispatch. The man told them that his girlfriend had stabbed him, and he directed them to a vehicle down the street where his girlfriend was located. This court found the primary purpose of the interrogation was to assist the victim in an ongoing emergency, not to establish or prove events potentially relevant to criminal prosecution. Accordingly, the statements were found to be nontestimonial and properly admitted.
 {¶ 26} In another case, McKenzie, supra, the responding officer observed the victim running out of an apartment, waving her arms and yelling. The victim pointed out a man walking down the street as the person who had just struck her. After the suspect was placed in the police car, the officer further interviewed the victim. This court found that the initial statements of the victim identifying the defendant were primarily intended for police assistance and were admissible. Id. at 4|36. We found, however, that the statements made after the defendant was placed in the police car were inadmissible because there was no longer an immediate threat to the victim. Thus, only statements that were made after the suspect was in custody and the emergency nature of the situation had concluded were declared inadmissible.
 {¶ 27} We reached the same conclusion in another recent case, City ofCleveland v. Colon, Cuyahoga App. No. 87824, 2007-Ohio-269. InColon, police *Page 11 
responded to an assault dispatch. The assault had just concluded when the officer arrived to find the victim hurt, bleeding, and crying. This court found that the victim's statements identifying the defendant as the person who had just assaulted her were nontestimonial because the police officer was assisting the victim with an ongoing emergency.
 {¶ 28} Although it is arguable in the instant case whether Haywood was still under the stress of the assault at the time she made the statement to police, it is apparent from other witness testimony at trial that she was the victim of an assault that lasted most of the evening. Moreover, she was present when Davis allegedly shot into the house where she was located. Her friend Suggs was shot, and one of Hillman's children was nearly shot. Davis had fled the scene, and the police had not yet apprehended him when Haywood told the police he had a gun. As inBrown, McKenzie, and Colon, the officer in the instant case observed Haywood's injuries.
 {¶ 29} We find that the specific facts of this case objectively indicate that there was an ongoing emergency at the time Haywood told the police that Davis had a gun. We further find that Haywood's statements were not made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Thus, we find her statement to be nontestimonial.
 {¶ 30} Our analysis does not end here, however, because we must determine if Haywood's statement falls under one of the exceptions to the hearsay rule. *Page 12 
Proffered hearsay may be admitted where it "falls within a firmly rooted hearsay exception." McKenzie, supra, citing Ohio v. Roberts
(1980), 448 U.S. 56, 100 S. Ct. 2531, 65 L.Ed.2d 597; see alsoCrawford, supra at 68 (finding that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as doesRoberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether").
 {¶ 31} Evid.R. 803(2) defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Four prerequisites must be satisfied in order for an excited utterance to be admissible: (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. See State v. Brown (1996),112 Ohio App.3d 583, 601, 679 N.E.2d 361.
 {¶ 32} It is apparent from the record in this case that the State laid a proper foundation for admission of Haywood's statement as an excited utterance. The officer testified that Haywood appeared hysterical and could hardly speak. The evidence reflects that Haywood was still under the excitement of a series of startling events in which she was assaulted, her friend was shot, and her friend's child was *Page 13 
nearly shot. Her statement related to the startling event. We find the statement had the requisite guarantees of trustworthiness and was part of a series of excited utterances.
 {¶ 33} Therefore, we find no plain error and conclude that Haywood's statements were nontestimonial and appropriately admitted as excited utterances. The first assignment of error is overruled.
 Sufficiency of the Evidence {¶ 34} In the second assignment of error, Davis argues that his conviction was not supported by sufficient evidence.
 {¶ 35} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. When a defendant challenges the sufficiency of the evidence, he or she is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law.State v. Hawn (2000), 138 Ohio App.3d 449, 471, 741 N.E.2d 594.
 {¶ 36} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a *Page 14 
reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, at paragraph two of the syllabus.
 {¶ 37} Davis was convicted of a violation of R.C. 2923.13, which provides in pertinent part that no person shall acquire, have, carry, or use a firearm if that person has been convicted of any felony offense of violence. Before trial began, the parties stipulated to Davis' prior conviction for aggravated assault.
 {¶ 38} Davis first claims there was insufficient evidence that he possessed a gun because the only indication he had a gun was the inadmissable statement Haywood made to the police. As discussed under the first assignment of error, we find that the trial court properly admitted that statement into evidence. Moreover, there was additional circumstantial evidence that Davis possessed a gun. Davis was seen driving Haywood's car minutes before the shooting occurred. Hillman and Suggs both testified that they heard the distinctive sound of the same car immediately prior to the shooting. Gunshot residue was found on the passenger door.
 {¶ 39} Davis argues that, although Haywood's car tested positive for gunshot residue on the passenger door, it was undisputed that the shot could have been fired only from the driver's side of the car. We disagree.
 {¶ 40} Hillman testified that when she saw Davis drive past the house, he was driving in a northerly direction. She heard the car return, but she did not see in which direction it was headed. Although one could assume that Davis doubled back *Page 16 
and was driving south, he could just as easily have circled the block so that he was headed north. The detective testified that he himself drove around the block so that he could draw a map of the area for trial purposes, and it took him about one minute to complete the drive.
 {¶ 41} Although two alibi witnesses testified that Davis was with them that evening, cell phone records admitted into evidence bolster the testimony of the State's witnesses. Davis further stresses that the jury acquitted him of all other charges. That argument, however, relates to the manifest weight of the evidence, which is not raised as an assignment of error. Nevertheless, although the jury acquitted Davis of all other charges, the trial court, as the trier of fact on the weapon charge, was in the best position to determine the credibility of the witnesses.
 {¶ 42} We find the State presented sufficient evidence to convict Davis of having a weapon under disability. Therefore, the second assignment of error is overruled.
 Ineffective Assistance of Trial Counsel {¶ 43} In the third assignment of error, Davis argues that he received ineffective assistance of trial counsel.
 {¶ 44} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052. To reverse a conviction for *Page 17 
ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389,2000-Ohio-448, 721 N.E.2d 52, citing Strickland, supra, at 687-688.
 {¶ 45} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 57 L.Ed.2d 1154,98 S.Ct. 3135; State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905.
 {¶ 46} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Strickland, supra, at 686. This is *Page 18 
commonly referred to as the Strickland test, and the failure to prove either prong makes it unnecessary for a court to consider the other.Madrigal, supra, at 389, citing Strickland, supra, at 697.
 {¶ 47} We find that Davis is unable to prove either prong of theStrickland test. Davis' sole argument under this assignment of error is that his counsel was ineffective because counsel did not object to Haywood's statement to the police that Davis had a gun. We have already determined that Haywood's statement was properly admitted by the trial court. Because this is Davis' only complaint, we find no ineffectiveness by counsel.
 {¶ 48} Therefore, the third assignment of error is overruled.
Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, P.J. and ANTHONY O. CALABRESE, JR., J. CONCUR *Page 1