OPINION
{¶ 1} Defendant-appellant, Ronald E. Stacy, appeals his conviction for felony murder in the Warren County Court of Common Pleas. We affirm the judgment of the trial court.
 {¶ 2} At approximately 3:17 p.m. on April 27, 2005, Warren County Emergency Services received a 9-1-1 call from appellant, stating that a nine-month-old infant, Caden Shea, was not breathing. Deputy Brombaugh of the Warren County Sheriff's Office arrived at the apartment and was directed upstairs by appellant's mother. Deputy Brombaugh observed appellant performing CPR on the infant. The deputy assisted appellant with CPR *Page 2 
efforts while also attempting to ascertain what had occurred to cause the child to stop breathing.
 {¶ 3} Appellant told Deputy Brombaugh that he had been playing with the child by tossing him into the air, the child became fussy, so he gave the child a bottle and placed him on the floor. Appellant stated that he then picked the infant up, but noticed that he was not breathing. He called the child's mother, appellant's girlfriend, who instructed appellant to call 9-1-1.
 {¶ 4} The Turtlecreek Life Squad arrived at the scene and took over the medical treatment of the child. The child was transported to Middletown Regional Hospital, where he was treated by Dr. Richard Sobel. Dr. Sobel testified that when the child arrived, he had very limited neurological function and was completely unresponsive. Dr. Sobel performed a funduscopic exam, discovering a retinal hemorrhage. The child was then transported to Children's Hospital in Cincinnati for further treatment by Dr. Marguerite Care, a pediatric radiologist. Dr. Care testified that the child had bleeding around, and very deep inside, his brain, evidencing significant trauma and suggesting child abuse. Dr. Jonathan Thackeray also conducted an examination of the child, observing bleeding around the brain and a pattern of blood in the eyes indicative of child abuse. While at Children's Hospital, the child died. Dr. Michael Kenny of the Hamilton County Coroner's Office performed an autopsy and concluded that child's death was caused by blunt force trauma to the head.
 {¶ 5} On May 9, 2005, appellant was indicted for felony murder in violation of R.C. 2903.02(B). Following trial, the jury returned a verdict of guilty. Appellant was sentenced to 15 years to life in prison. Appellant timely appeals, raising seven assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED WHEN IT PROHIBITED APPELLANT FROM *Page 3 
 {¶ 8} Appellant argues in his first assignment of error that the trial court erred by prohibiting him from calling Lieutenant Jerry Mays as a witness at trial to testify regarding statements he made to theCincinnati Enquirer. In a story regarding the case at bar, theEnquirer quoted Lt. Mays as saying:
 {¶ 9} "`He was throwing the baby up in the air, catching him and spinning him,' said Warren County Sheriff's Lieutenant Jerry Mays, `We believe, at this point, that it was not intended to hurt the baby,' he said. `It was stupid horseplay with the baby, and he dropped it."
 {¶ 10} Appellant sought to question Lt. Mays at trial about this statement. Appellant argues that this testimony is not hearsay because it is an "admission by party-opponent" and should not have been excluded by the trial court as it supports appellant's defense theory that the injury was an accident. Appellant claims he was denied due process of law, a fair trial, and his right to confront witnesses by excluding the testimony.
 {¶ 11} As a preliminary matter, we note that although the trial court made a preliminary ruling on a motion in limine to exclude the evidence, appellant never made a proffer of Lt. Mays' statement at trial. By failing to proffer Lt. Mays' testimony, appellant has waived all except plain error. See State v. Grubb (1986), 28 Ohio St.3d 199.
 {¶ 12} Crim.R. 52(B) provides a necessary exception to the general rule of waiver. It provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error, the court "must find error, the error must be plain, which means an obvious defect in trial proceedings, and the error must have affected the defendant's substantial rights." State v. Davis, Cuyahoga App. No. 88649, 2007-Ohio-3419, ¶ 17, citing State v. Barnes, 94 Ohio St.3d 21,2002-Ohio-68. This requires a finding that "but for the error, the outcome of the trial clearly would have been different." Davis at ¶ 17, citing State v. Long (1978), *Page 4 53 Ohio St.2d 91; State v. Hill, 92 Ohio St.3d 191, 203, 2001-Ohio-141.
 {¶ 13} Evid.R. 801(D)(2) provides, in pertinent part, "A statement is not hearsay if: The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or * * * (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship * * *."
 {¶ 14} Courts have generally held that statements by law enforcement officers are generally not admissible against the prosecution as an admission of a party-opponent. 2 Giannelli Snyder, Baldwin's Ohio Practice, Evidence (2001) 45, Section 801.28; see, also, United Statesv. Kampiles (C.A.7, 1979), 609 F.2d 1233; United States v. Kendrick
(C.A.6, 1988), 853 F.2d 492. "Courts faced with this issue have refused to apply this provision to government employees testifying in criminal trials based on the rationale that no individual can bind the sovereign." United States v. Prevatte (C.A.7, 1994), 16 F.3d 767, fn. 9.
 {¶ 15} Accordingly, there was no error in failing to permit Lt. Mays' statement at trial. It is unclear why Lt. Mays would have made a public statement on the matter. Lt. Mays had no first-hand knowledge of the incident. Lt. Mays was not involved in the investigation, was never at the scene of the crime, never saw the victim, and never spoke to appellant.
 {¶ 16} Appellant's first assignment of error is overruled.
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO PRESENT IRRELEVANT AND IMPROPER CHARACTER EVIDENCE REGARDING APPELLANT'S DRUG USE."
 {¶ 19} Appellant argues in his second assignment of error that the trial court erred by allowing Deputy Brombaugh to testify that upon entering the residence he detected a smell of marijuana, found 41 marijuana cigarette butts around the upstairs computer, and found *Page 5 
marijuana and hallucinogenic mushrooms in a closet. Further, appellant argues the trial court erred by allowing the mother of the child to testify that appellant smoked marijuana on a daily basis and by admitting Exhibit 19, a police interview of appellant that references the drugs and his drug use habits. Appellant submits that this is irrelevant and improper character evidence or, in the alternative, the evidence should have been excluded because its probative value is substantially outweighed by unfair prejudice.
 {¶ 20} Like the previous assignment of error, appellant's trial counsel failed to object to the drug use evidence. Accordingly, we will apply a plain error standard of review.
 {¶ 21} Evid.R. 402 states, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."
 {¶ 22} Evid.R. 401 defines "Relevant Evidence" as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 23} Further, Evid.R. 403(A) states, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 24} As a general rule, evidence that tends to show that the accused has committed other crimes independent of the crime for which he stands trial is not admissible to show that he acted in conformity with his bad character. State v. Elliott (1993), 91 Ohio App.3d 763, 770. Evidence of another crime is admissible, however, when it is inextricably intertwined with the offense such that it tends to logically prove an element of the crime. State v. Wilkinson (1980) 64 Ohio St.3d 308, 317. *Page 6 
 {¶ 25} In this case, appellant was charged with felony murder, with the underlying felony being child endangering. Felony murder, under R.C.2903.02(B), is defined as "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 {¶ 26} To establish a violation of child endangering, the state must prove an affirmative act of abuse against a child that was committed recklessly. State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 713. To establish recklessness, the state must show that the abuse was perpetrated with heedless indifference to the consequences of the action. Id.
 {¶ 27} The state's theory of the case was that appellant was reckless in shaking or dropping the child and failing to immediately call the police. To demonstrate appellant's recklessness, the state presented evidence of appellant's drug use consisting of observations by the police during the investigation, testimony of the child's mother, and appellant's own admissions. Deputy Brombaugh stated that upon entering the residence, he detected a smell of burnt marijuana. The deputy's present sense impression testimony suggests that appellant had smoked marijuana while supervising the child.
 {¶ 28} Appellant's second assignment of error is overruled.
 {¶ 29} Assignment of Error No. 3:
 {¶ 30} "THE TRIAL COURT ERRED WHEN IT PERMITTED STATE'S WITNESSES TO TESTIFY AS EXPERTS WITHOUT SATISFYING THE REQUIREMENTS OF EVID.R. 702, 703, 704, AND 705 AND WHERE SUCH TESTIMONY WAS OUTSIDE THE SCOPE OF ANY EXPERTISE AND NOT STATED WITHIN A REASONABLE DEGREE OF MEDICAL CERTAINTY."
 {¶ 31} In his third assignment of error, appellant argues the court erred by permitting *Page 7 
three doctors to testify at trial without satisfying the rules of evidence for expert witnesses.
 {¶ 32} First, appellant attacks the testimony of Dr. Marguerite Care. Appellant argues that Dr. Care could not testify regarding her interpretations and conclusions of the CT scan because there was no foundational testimony that the scan was conducted in a way to yield an accurate result. Further, appellant argues Dr. Care did not participate in the treatment of the child and, as a result, her opinions were not based on first-hand knowledge. Finally, appellant argues Dr. Care's opinion regarding child abuse were outside the scope of her expertise.
 {¶ 33} Similarly, appellant argues that the testimony of Dr. Jonathan Thackeray regarding the interpretation and findings from the CT scan was improper because the foundational requirements of Evid.R. 702(C) were not met. Further, appellant argues Dr. Thackeray's conclusions were not presented within a reasonable degree of medical certainty.
 {¶ 34} Also, appellant argues Dr. Daniel Davis was improperly allowed to testify to matters outside of the scope of his written report. Further, appellant argues it was improper for the court to permit the state to play a computer simulation of an injury caused by shaking a baby, which accompanied Dr. Davis' testimony. Appellant posits that the video was irrelevant because Dr. Davis' conclusion as to the cause of death was blunt force trauma, not shaken baby syndrome, and the video may have inflamed and aroused passion in the jury.
 {¶ 35} Appellant's trial counsel failed to raise an objection at trial to the testimony and evidence at issue, waiving all but plain error.
 {¶ 36} Evid.R. 702 states, "A witness may testify as an expert if all of the following apply:
 {¶ 37} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; *Page 8 
 {¶ 38} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 39} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 40} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 41} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 42} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 43} Evid.R. 703 states that experts may base their opinions on facts or data "perceived by the expert or admitted in evidence at the hearing."
 {¶ 44} After a review of the record, we find appellant's arguments are without merit. The expert opinions in this case were based on perceptions by each expert's examination of properly admitted evidence, including the CT scan and medical reports. Further, Dr. Care and Dr. Davis formed their opinions by examining the CT scan and medical records, while Dr. Thackery personally evaluated the victim in this case.
 {¶ 45} Additionally, despite appellant's contentions, Dr. Thackery concluded within a reasonable degree of medical certainty that the injuries were the result of child abuse. At trial, the prosecution asked Dr. Thackery: "Doctor, do you have an opinion, within a reasonable degree of medical certainty, as to whether Caden Shea's injuries were consistent with abusive head trauma?"
 {¶ 46} Dr. Thackery replied, "I believe they are consistent with abusive head trauma."
 {¶ 47} Finally, the simulation was properly admitted, as it was demonstrative of the *Page 9 
prosecution's case of child abuse and a possible contributing factor to the child's death. The use of a computer generation or simulation at trial is permissible. See State v. Clark (1995), 101 Ohio App.3d 389. In this case, Dr. Davis used the video simulation as a visual aid to assist the jury in understanding shaken baby syndrome.
 {¶ 48} Appellant's third assignment of error is overruled.
 {¶ 49} Assignment of Error No. 4:
 {¶ 50} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 51} Appellant argues he received ineffective assistance of counsel due to trial counsel's failure to proffer testimony of Lt. Mays, failure to object to testimony regarding appellant's drug use, and failure to object to the expert medical testimony.
 {¶ 52} Reversal of a conviction for ineffective assistance requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052; State v. Ketterer,111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 81.
 {¶ 53} A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance.Strickland at 689. While the wisdom of a given strategy may be debatable, trial tactics, even "debatable trial tactics," do not constitute a denial of effective assistance of counsel. State v.Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146; State v.Heffernan, Clermont App. Nos. CA2005-11-104, CA2005-11-105,2006-Ohio-5659, ¶ 11.
 {¶ 54} As demonstrated by the three previous assignments of error, appellant was not prejudiced by the errors or omissions of his trial counsel because Lt. Mays had no first-hand knowledge of appellant's case, the evidence of appellant's drug use was relevant, and there *Page 10 
was no error regarding the state's expert medical testimony.
 {¶ 55} Appellant's fourth assignment of error is overruled.
 {¶ 56} Assignment of Error No. 5:
 {¶ 57} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 58} Appellant argues in his fifth assignment of error that his conviction is against the manifest weight of the evidence because "there is no objective fact in the record to base a conclusion, other than that this was a tragic accident" and the jury lost its way by considering improper evidence regarding appellant's drug use and expert testimony about child abuse.
 {¶ 59} When considering a manifest weight of the evidence challenge, an appellate court reviews the entire record, weighing the evidence and all reasonable inferences that can be drawn from it, and considers the credibility of witnesses, to determine whether in resolving conflicts in the evidence, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 60} After a thorough review of the record, considering the evidence and reasonable inferences therefrom, we conclude that the evidence supports the trial court's decision by the required degree of proof.
 {¶ 61} Assignment of Error No. 6:
 {¶ 62} "THE JURY'S VERDICT OF GUILTY IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."
 {¶ 63} In this case, appellant was convicted of felony murder in violation of R.C. 2903.02(B), with the underlying felony of child endangering in violation of R.C. 2919.22(B)(1). *Page 11 
In his sixth assignment of error, appellant attacks the sufficiency of the evidence.
 {¶ 64} The Supreme Court of Ohio has held that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins,78 Ohio St. 3d 380, 386, 1997-Ohio-52. We will first address appellant's claim that his conviction is not supported by sufficient evidence.
 {¶ 65} In reviewing the record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. When deciding a sufficiency of the evidence issue, the reviewing court will not substitute its evaluation of witness credibility for that of the trier of fact. State v. Benge, 75 Ohio St.3d 136, 142, 1996-Ohio-227. The state can use either direct or circumstantial evidence to prove the elements of a crime. State v. Nicely (1988), 39 Ohio St.3d 147, 151. Furthermore, "circumstantial evidence and direct evidence inherently possess the same probative value." Jenks, paragraph one of the syllabus.
 {¶ 66} A review of the evidence demonstrates that the state presented sufficient evidence to convict appellant of felony murder. At trial, appellant testified that he had spun and flipped the child, tossed him in the air, and accidentally dropped him while playing with him. The state presented testimony of medical experts who testified that the child's injuries were the result of shaking and abuse. Further, the investigating officer testified about his observations upon arriving at the residence and appellant's multiple, changing versions of the facts.
 {¶ 67} Appellant's sixth assignment of error is overruled.
 {¶ 68} Assignment of Error No. 7:
 {¶ 69} "APPELLANT WAS DENIED A FAIR TRIAL DUE TO CUMULATIVE ERRORS *Page 12 
BY THE TRIAL COURT AND TRIAL COUNSEL."
 {¶ 70} In his final assignment of error, appellant argues he was denied a fair trial due to the cumulative errors of the trial court and his trial counsel.
 {¶ 71} Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner, 74 Ohio St.3d 49, 64,1995-Ohio-168, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus.
 {¶ 72} Since we do not find any instances of error in the case at bar, we overrule appellant's seventh assignment of error.
 {¶ 73} Judgment affirmed.
 BRESSLER, P.J., and POWELL, J., concur. *Page 1