OPINION
{¶ 1} Defendant-appellant, Damon Shawn Lloyd, appeals his conviction in the Warren County Court of Common Pleas for murder.
 {¶ 2} On November 1, 2006, at about 12:50 p.m., appellant fatally shot David Richardson with his Smith Wesson nine millimeter semi-automatic handgun. The shooting occurred at appellant's residence. Appellant was indicted on one count of murder in violation *Page 2 
of R.C. 2903.02(A) with a firearm specification. Appellant waived his right to a jury trial and the matter was tried before the bench. The events leading to the shooting were described by appellant during his trial as follows:
 {¶ 3} Appellant and Richardson knew one another since childhood. In the summer of 2006, after running into him, appellant offered Richardson, who was having marital and financial difficulties, to move in with him and his family. Richardson had been a boxer, a bodyguard, and a bouncer and, according to appellant, would brag about beating up people. Richardson also carried a .45 handgun with him and was wanted in Warren County for nonpayment of child support. During that summer, appellant and Richardson practiced target shooting together on appellant's property.
 {¶ 4} In October 2006, Richardson's behavior began to change. He became moody, "dark," and more distant, took off more and more, used the house as a "weigh station," and would have angry conversations on his cell phone. Suspecting drug abuse (crack cocaine), appellant talked to Richardson who acknowledged he had a problem.
 {¶ 5} In the evening of October 29, 2006 (the Sunday before the November 1 shooting and death of Richardson), appellant came home to find his intoxicated wife "passed out" on the couch with her hair draped over Richardson's lap. Asked what was going on, Richardson either smiled or laughed at appellant with a guilty look in his eyes (the next morning, appellant's wife was heard crying in the shower that she had semen in her hair). Appellant put his wife to bed; he then confronted Richardson with a telephone in one hand and a shotgun in the other and ordered him to leave the house and never come back. Richardson complied but was not happy about it.
 {¶ 6} Between Sunday evening and the following Wednesday (November 1), appellant and Richardson exchanged phone calls. According to appellant, the phone calls on Sunday were hot and heated on both sides, with Richardson threatening appellant and his *Page 3 
family with physical harm, but cooled down on Monday and Tuesday. However, on the day of the shooting, after appellant received a phone call from Richardson in which Richardson threatened to physically harm appellant and his family and burn their house, appellant retrieved his handgun. Although terrified of Richardson, appellant did not call the police. When Richardson called back 20 minutes later, the men agreed to have Richardson's father, Ova Richardson, come to appellant's house to retrieve Richardson's belongings.
 {¶ 7} Shortly thereafter, appellant saw Ova drive his pick-up truck in appellant's driveway and park in the back. Seated next to Ova was Richardson (also in the vehicle was Ova's three-year-old granddaughter). Expecting a beating from Richardson, appellant tucked his handgun in his back pocket, told his wife to stay in the living room, and went into the dining room. The dining room, which is on the side of the house, can be entered from the outside through a porch and a wooden door and its screen door. As appellant was yelling at Richardson to leave the property, Richardson opened the screen door and started pounding on the wooden door. Then, Richardson slapped at the door lock with his palm; the door flew open; Richardson came at appellant "at a full rush," angry, and threatening to kill him; inside the dining room, appellant twice shot Richardson who spun around and jumped back out of the wooden door and onto the porch; Richardson lunged at appellant who shot him one more time. Appellant then closed both the screen door and the wooden door and told his wife to call 911. Although the police and the paramedics were on the scene very quickly, Richardson was already dead with two gunshot wounds to the chest and one to the abdomen.
 {¶ 8} Throughout his testimony, appellant claimed self-defense, explaining that he never intended to kill Richardson; once Richardson was in the house, appellant had nowhere to go; and he had no choice but to shoot at Richardson to protect himself and his family. On March 29, 2007, at the end of the bench trial and after both parties rested, the trial court rejected appellant's claim of self-defense and found him guilty as charged. Appellant was *Page 4 
sentenced to 15 years to life in prison with a consecutive three-year prison term for the firearm specification.
 {¶ 9} Appellant appeals, raising five assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE USE OF THE APPELLANT'S SILENCE AND REQUEST FOR COUNSEL AS PROOF OF GUILT IS PLAIN ERROR."
 {¶ 12} Appellant argues that his due process rights were violated when the prosecutor improperly questioned him regarding the fact appellant invoked his right to counsel after he was arrested at the crime scene. Appellant argues that the prosecutor's improper cross-examination implied he was guilty in violation of Doyle v. Ohio (1976),426 U.S. 610, 96 S.Ct. 2240; and State v. Leach, 102 Ohio St.3d 135,2004-Ohio-2147.
 {¶ 13} Because appellant did not object to this line of questioning, we review the challenge for plain error only. See State v. Wayne, Butler App. No. CA2006-06-128, 2007-Ohio-3351. For a reviewing court to find plain error, (1) the court must find error; (2) the error must be plain, that is, it must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," that is, the trial court's error must have affected the outcome of the trial.State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 16. Courts are to notice plain error "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice."State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68.
 {¶ 14} Toward the end of his direct examination, appellant's attorney asked appellant whether he was given an opportunity at the crime scene to explain to the police what had just happened. Appellant testified that he was denied this opportunity because as soon as he told a deputy sheriff he had shot Richardson, he was placed in handcuffs and put in the police *Page 5 
cruiser. Subsequently, appellant's cross-examination started as follows:
 {¶ 15} "Q. [by the prosecutor] Mr. Lloyd, you were asked about having an opportunity to talk to the police about what happened, November 1, 2006, isn't that true?
 {¶ 16} "A. Yes, ma'am.
 {¶ 17} "Q. You actually said that you were upset, that you wanted to be able to tell them what happened, because this is so wrong that this has been going on?
 {¶ 18} "A. I felt it was wrong that I was being arrested.
 {¶ 19} "Q. And wasn't it true that you were asked by police and you told them, I don't want to talk to you again without my attorney present?
 {¶ 20} "A. After I had been handcuffed and put in the car. [The record shows that appellant was read his Miranda rights before he invoked his right to counsel.]
 {¶ 21} "Q. So, you would've talked to them prior to handcuffs, but once you were handcuffed, you decided that's when you weren't going to talk, is that what it was?
 {¶ 22} "A. I am still, I was in shock. I couldn't believe that they handcuffed me and drug out of my house."
 {¶ 23} The record shows that while appellant claimed self-defense at trial, he never specifically mentioned self-defense to the police officers after he was arrested and read his Miranda rights. Appellant did state a couple of times, while talking to a deputy sheriff on their way to and at the sheriff's office, that "[he] did what [he] had to do."
 {¶ 24} The issue in Doyle was whether "a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest."Doyle, 426 U.S. at 611. The United States Supreme Court noted thatMiranda warnings do not expressly state that silence will carry no penalty, such is implicit and thus, "it *Page 6 
would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. at 618. The Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Id. at 619.
 {¶ 25} In State v. Leach, the Ohio Supreme Court held that the use of a defendant's post-arrest, post-Miranda invocation of his right to counsel as substantive evidence of guilt in the state's case-in-chief violated the Due Process Clauses of the state and federal Constitutions.Leach, 2004-Ohio-2147, at ¶ 1, 17-18, citing Wainwright v.Greenfield (1986), 474 U.S. 284, 106 S.Ct. 634.
 {¶ 26} Upon reviewing the record, we find that plain error does not exist. At first blush, the prosecutor's questioning of appellant on cross-examination regarding his post-arrest, post-Miranda invocation of his right to counsel does appear to fall in line with the kind of statements prohibited by Doyle and Leach. However, unlike inLeach, appellant's post-arrest, post-Miranda assertion of his right to counsel, as challenged in this assignment of error, was not used in the state's case-in-chief.[1] In addition, "a prosecutor may question a defendant about post-arrest silence, without a Doyle violation, if the defendant has raised the issue on direct examination. * * * [I]f defense counsel opens the subject area in direct examination, it is not improper for the prosecutor to cross-examine the defendant on the same matter." (Citations omitted.) State v. Eason, Belmont App. No. 02 BE 41,2003-Ohio-6279, ¶ 29-30, citing Anderson v. Charles (1980),447 U.S. 404, 100 S.Ct. 2180.
 {¶ 27} The record shows it was appellant's attorney, rather than the prosecutor, who *Page 7 
initially (and implicitly) questioned appellant about his post-arrest silence. During his direct examination as a witness testifying on his behalf, appellant attempted to show he was denied an opportunity to explain his version of the incident at the crime scene. The prosecutor's line of questioning tried to clarify that appellant had the opportunity to tell his side of the story, but that he refused to talk and invoked his right to counsel. See Eason at ¶ 105, 111 (prosecutor's comments fall outside the realm of Doyle. The state cannot be expected to forego commenting on a defendant's post-arrest silence when the defendant himself testifies about that silence as part of his defense).
 {¶ 28} Further, and even assuming that the prosecutor's questioning of appellant on cross-examination regarding his post-arrest,post-Miranda invocation of his right to counsel was in violation ofDoyle and Leach, "this was a bench trial and the trial court is presumed to know the applicable law and apply it accordingly. In addition, the trial court is presumed to consider only reliable, relevant, and competent evidence unless it affirmatively appears to the contrary."State v. Waters, Cuyahoga App. No. 87431, 2006-Ohio-4895, ¶ 18. There is no indication in the record that the trial court was influenced by the foregoing line of questioning or that it relied upon it in arriving at its decision. The record further shows that following this line of questioning, the state did not comment upon appellant's invocation of his right to counsel at any point during trial or closing argument.
 {¶ 29} Appellant's first assignment of error is accordingly overruled.
 {¶ 30} Assignment of Error No. 2:
 {¶ 31} "THE COURT ERRED IN FAILING TO CONSIDER A LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER."
 {¶ 32} Appellant argues that in light of his testimony he shot Richardson in self-defense and had no intention to kill him, the trial court committed plain error by not considering *Page 8 
involuntary manslaughter as a lesser included offense.
 {¶ 33} We note at the outset that the parties never argued involuntary manslaughter during trial. Rather, their arguments focused on the offenses of murder and voluntary manslaughter and whether appellant acted in self-defense. It is well-established that involuntary manslaughter is a lesser included offense of murder. See State v. Kidder( 1987), 32 Ohio St.3d 279. Nonetheless, a trial court is presumed to know the law and to have considered any lesser included offense or inferior degree offense warranted by the evidence. See In re Z.C., Warren App. Nos. CA2005-05-065,-066,-081,-082, 2006-Ohio-1787; State v.Williams (June 1, 1993), Butler App. No. CA92-07-133.
 {¶ 34} At the end of the bench trial, the trial court rejected appellant's claim of self-defense (and voluntary manslaughter) and found him guilty as charged of murder under R.C. 2903.02(A). R.C. 2903.02(A) defines murder as the purposeful killing of another. As is thoroughly discussed in the next assignment of error, the evidence submitted at trial plainly supports the trial court's rejection of appellant's self-defense claim, its finding appellant acted purposely when he shot Richardson, and thus the guilty verdict for murder. Because the evidence at trial did not support an acquittal on the murder charge, we find no error in the trial court's alleged failure to consider the lesser included offense of involuntary manslaughter. See State v. Johnson, Mahoning App. No. 00 CA 131, 2001-Ohio-3506 (in a bench trial, whether or not the trial court considered a lesser included offense is essentially irrelevant once the court determined that all elements of murder had been proven). As a result, appellant cannot establish plain error. Appellant's second assignment of error is overruled.
 {¶ 35} Assignment of Error No. 3:
 {¶ 36} "APPELLANT'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 9 
 {¶ 37} Appellant argues that his murder conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Specifically, appellant asserts that given his uncontroverted testimony he shot Richardson in self-defense, and given the fact he was the only person to testify as to the events of the shooting, the state failed to establish he intended to kill Richardson and the trial court erred in rejecting his self-defense claim and in finding him guilty of murder.
 {¶ 38} We decline to consider appellant's insufficiency of the evidence argument for the following reasons. First, a Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence. State v.Miley (1996), 114 Ohio App.3d 738, 742. It is well-established that a failure to renew a Crim. R. 29(A) motion for acquittal at the close of all the evidence constitutes a waiver of any error relative thereto. SeeState v. Julian III (May 15, 1989), Brown App. No. CA88-12-015;State v. Troglin, Union App. No. 14-04-41, 2005-Ohio-6562. Although appellant moved for acquittal at the end of the state's case-in-chief, he failed to renew his motion at the close of all the evidence.
 {¶ 39} Alternatively, Crim. R. 29 has no application in a case tried to the bench. State v. Massie, Guersney App. No. 05CA000027,2006-Ohio-1515, ¶ 23, applying federal cases decided under Fed.R.Crim.P.29 ("The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim. R. 29 motion at the close of all the evidence").
 {¶ 40} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins,78 Ohio St.3d 380, 386-387, 1997-Ohio-52. "The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable *Page 10 
inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 41} As noted earlier, the trial court rejected appellant's claim of self-defense and found him guilty of murder under R.C. 2903.02(A). To establish self-defense, a defendant must show that (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief he was in imminent danger of death or great bodily harm and his only means of escape was the use of force; and (3) he did not violate any duty to retreat or avoid the danger. State v. Williford (1990),49 Ohio St.3d 247, 249. If the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense. Id.
 {¶ 42} R.C. 2903.02(A) provides in relevant part that "No person shall purposely cause the death of another." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against a conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2101.22(A).
 {¶ 43} A defendant's specific intent to kill can be established by circumstantial evidence. State v. Jenks (1991), 61 Ohio St.3d 259, 272. The trier of fact may deduce a "purposeful" intent to kill from the surrounding circumstances, including the type of instrument used to produce death, its tendency to destroy life if designed for that purpose, and the *Page 11 
manner of inflicting the fatal wound. State v. Stallings,89 Ohio St.3d 280, 290, 2000-Ohio-164. Because a firearm is an inherently dangerous instrument likely to cause death, a purposeful intent to kill may be inferred from the use of a firearm. See State v. Shue (1994),97 Ohio App.3d 459; State v. Kincaid, Cuyahoga App. No. 88362, 2007-Ohio-2228.
 {¶ 44} The trial court found that appellant was not at fault in creating the violent situation and that he had no duty to retreat. However, the trial court found that appellant should have avoided the danger by calling the police or 911 since he had testified he was terrified of Richardson, had been threatened by Richardson, and thought he was about to be harmed. The trial court also found that appellant did not prove the second element of self-defense:
 {¶ 45} "[Appellant's] version of what occurred, was that [Richardson] forced his way into his home, after making numerous and repeated threats of violence towards both [appellant], his family and his house. There is absolutely no corroboration for any of those threats, in terms of tape recordings. There was [sic] no calls to the police indicating that I am in fear, I am threatened, I am in danger, I need my family to be protected. The claim that the shooting occurred inside the dining room is not at all supported by the physical evidence. * * * I do conclude that I disagree with the conclusion of Mr. Dehus [appellant's expert witness] and his report * * * that both men were in the dining room at the time, at least two of the three shots were fired. There were no droplets of blood found on the floor. * * * [I]t is not consistent with the physical evidence to find that David Richardson was actually physically through the doorway at the time the shooting occurred. * * * [T]he evidence * * * does persuade me that he was not shot inside the room itself. That's an important finding. Because, it directly contradicts what [appellant] claims happened. [Appellant] has a reason to try to persuade me that he was being attacked at the moment of the crime, because self-defense indicates * * * that he must show a bonified [sic] belief that this was imminent danger, not just possible *Page 12 
danger, not just threats."
 {¶ 46} Finally, the trial court did not find credible appellant's testimony that Richardson came to his house in broad daylight, without his .45 handgun even though he knew appellant had firearms, with his father and a young child, to inflict great bodily harm on appellant and his family, when Richardson had a bus ticket to leave town and go to Georgia to work for a friend of his.
 {¶ 47} We find that the record supports the trial court's finding that appellant did not act in self-defense and instead purposely caused the death of Richardson. Although appellant knew that Richardson was wanted in Warren County for nonpayment of child support, and although he was terrified of Richardson and was allegedly threatened repeatedly by Richardson with great bodily harm and destruction of property between Sunday evening and the day of the shooting, appellant never called the police. Appellant explained he did not call because he did not want Richardson to be in any more trouble than he already was (for nonpayment of child support). Likewise, upon seeing Richardson in Ova's truck on the day of the shooting, appellant did not call 911 and instead grabbed his handgun which he put in his back pocket. Subsequently, as Richardson was knocking on the door, appellant yelled at him to leave but never told or showed Richardson he had a firearm.
 {¶ 48} Appellant's version of the incident was that Richardson broke into the house by slapping at the door lock with his palm; the door flew open and Richardson came at appellant; Richardson was shot twiceinside the dining room, past the doorway; and appellant never opened the door for Richardson. This version was contradicted at trial, however, as follows. During her 911 call following the shooting, appellant's wife twice stated that Richardson was trying to break in the house when he was shot by appellant. Appellant's wife also stated that Richardson had been ejected from the property on the previous Thursday when in fact he had been ejected on Sunday. *Page 13 
 {¶ 49} During a phone call to his mother while he was in jail, appellant can be clearly heard stating: "it happened right there in the dining room doorway," and "I was scared to death he was going to break that window of that antique door; so I reached over and unlocked the deadbolt[.]" In another call from jail, while talking about Richardson's funeral, appellant is heard stating: "they should have lined all [the Richardsons] up and shot them all." At trial, appellant claimed not remembering making these statements.
 {¶ 50} A deputy sheriff dispatched to the scene and a detective both testified there was no evidence of forced entry. There was also absolutely no evidence or traces of blood in the dining room, even though based on appellant's testimony, blood should have been found in the room (the testimony was that he first shot Richardson when the latter was inside the dining room and appellant observed blood squirt out of the top of Richardson's chest). Richardson's blood was found, however, on the porch and the stairs, on the ground where he fell after being shot, and on two smears on the screen door (one on the outside and the other on the inside). There was no explanation given as to how Richardson's blood was smeared on the screen door. The trial court surmised that the blood could have come from Richardson or could have come from Ova after Ova held his son in his arms and then knocked on the screen door.
 {¶ 51} Larry Dehus, appellant's expert witness, testified that based on the location of the three casings in the dining room, Richardson and appellant were both inside the dining room when Richardson was shot; Richardson was "far" into the house when he was shot; and the blood smear on the inside of the screen door came from Richardson as he was leaving the house. Yet, no blood was found inside the dining room. As already noted, the trial court chose to disagree with Mr. Dehus' conclusion. It is entirely appropriate for the trier of fact to believe the testimony of some witnesses while disregarding the testimony of other witnesses. See State v. Burns (1996), 113 Ohio App.3d 598. *Page 14 
 {¶ 52} Appellant pointed a fully-loaded nine millimeter semi-automatic handgun at Richardson and shot three bullets into his body. By his own account, appellant was about two feet away from Richardson when he fired the first two shots. They were therefore shot at close range. In addition, appellant fired the three shots with pinpoint accuracy (hitting Richardson with three of the three shots). Finally, all three shots were potentially fatal. See State v. Rawlings (Dec. 24, 1998), Scioto App. No. 97CA2539 (fact that defendant fired at close range, with pinpoint accuracy through the glass door where the victim was standing belied the defendant's assertion he did not intend to kill his victim);State v. Smith (1993), 89 Ohio App.3d 497 (given the close range [less than 20 feet away] and caliber of the firearm [a nine-millimeter handgun], a trier of fact could construe the defendant's intention to shoot as proof of an intention to kill).
 {¶ 53} In light of all of the foregoing, we find that appellant's murder conviction is not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 {¶ 54} Assignment of Error No. 4:
 {¶ 55} "APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL."
 {¶ 56} Appellant argues his trial counsel was ineffective because he (1) failed to object to the prosecutor's questions during appellant's cross-examination regarding appellant's invocation of his right to counsel; and (2) failed to "request an instruction on involuntary manslaughter, [o]r at a minimum, object to the Court's failure to include such an instruction."
 {¶ 57} To establish ineffective assistance of counsel, a defendant must show that his trial attorney's performance was both deficient and prejudicial. State v. Bradley (1989), 42 Ohio St.3d 136, 141-142, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. The *Page 15 
defendant must first show that his "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington
(1984), 466 U.S. 668, 688, 104 S.Ct. 2052. Second, the defendant must show "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley at 143. The defendant bears the burden of establishing both prongs before a reviewing court will deem trial counsel's performance ineffective. Strickland at 687.
 {¶ 58} A properly licensed attorney is presumed competent. Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 301. Any questions regarding the ineffectiveness of counsel must be viewed in light of the evidence against the defendant, Bradley at 142-143, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland at 689. A presumption exists that "under the circumstances, the challenged action `might be considered sound trial strategy.'" Id.
 {¶ 59} With regard to trial counsel's failure to object during the state's cross-examination of appellant as to his invocation of his right to counsel, we find that it does not constitute ineffective assistance of counsel. There is a presumption that in a bench trial, the trial court knows the applicable law and applies it accordingly, see State v.Eley (1996), 77 Ohio St.3d 174, and relies only on relevant, material, and competent evidence in arriving at its judgment. See State v.Lane (1995), 108 Ohio App.3d 477. We find nothing in the record indicating that the prosecutor's cross-examination regarding appellant's invocation of his right to counsel influenced the trial court in finding appellant guilty of murder. Absent anything in the record indicating otherwise, we are unwilling to assume that the judge was prejudiced by the foregoing. Further, given the evidence presented at trial against appellant, appellant cannot show that his trial counsel's failure to object prejudiced the outcome of his trial. Appellant therefore failed to show that his trial counsel's performance was prejudicial. *Page 16 
 {¶ 60} With regard to trial counsel's failure to request an instruction on involuntary manslaughter or object to the trial court's failure to include such an instruction, we note that because the case was tried to the bench and not to a jury, appellant's attorney could not have asked for a jury instruction. Assuming, however, that appellant's argument refers to his trial attorney's failure to either argue or ask the trial court to consider involuntary manslaughter, we find that it does not constitute ineffective assistance of counsel.
 {¶ 61} A defendant does not receive ineffective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. State v. Stojetz, Madison App. No. CA2002-04-006, 2002-Ohio-6520, ¶ 22. Trial counsel chose to argue self-defense and, to a lesser extent, voluntary manslaughter. It is not the role of the appellate court to second-guess the strategic decisions of trial counsel. Id. Hindsight may not be used to distort the assessment of what was reasonable in light of counsel's perspective at the time.Stojetz at ¶ 22. We therefore find that appellant failed to show that his counsel's representation was deficient. See, also, State v.Buckley (Nov. 22, 1995), Cuyahoga App. No. 68419 (since it is presumed that a court in a bench trial considers all lesser included offenses which are supported by the evidence, defense counsel was not ineffective in failing to request the consideration of a lesser included offense).
 {¶ 62} Appellant's fourth assignment of error is overruled.
 {¶ 63} Assignment of Error No. 5:
 {¶ 64} "CUMULATIVE ERRORS DEPRIVED THE APPELLANT OF A FAIR TRIAL."
 {¶ 65} Under the doctrine of cumulative errors, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner, 74 Ohio St.3d 49, 64,1995-Ohio-168, citing State v. *Page 17 DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus;State v. Stacy, Warren App. No. CA2006-02-021, 2007-Ohio-6744.
 {¶ 66} Because we do not find any instances of error in the case at bar, appellant's fifth assignment of error is overruled.
 {¶ 67} Judgment affirmed.
WALSH, P.J. and BRESSLER, J., concur.
[1] We note that during the state's case-in-chief and on direct examination, a deputy sheriff testified that once appellant admitted shooting Richardson, appellant was arrested and read hisMiranda rights, and that he subsequently stated "he did not want to say anything else until he talked to a lawyer." Appellant's attorney did not object. On appeal, appellant does not challenge this testimony or his attorney's failure to object. *Page 1