[Cite as *State v. Lloyd*, 2018-Ohio-803.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2017-07-104 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 3/5/2018 |
| - vs - | : | |
| | : | |
| DAMON SHAWN LLOYD, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 06CR23706

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Damon S. Lloyd, #A547349, Chillicothe Correctional Institution, 15802 State Route 104, Chillicothe, Ohio 45601, defendant-appellant, pro se

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Damon Shawn Lloyd ("Lloyd"), appeals from an amended and corrected judgment entry of sentence issued by the Warren County Court of Common Pleas convicting and sentencing him to serve an aggregate term of 18 years in prison after he was found guilty of murder with an accompanying firearm specification following a bench trial. For the reasons outlined below, we affirm.

**The Murder of David Richardson**

{¶ 2}   On November 9, 2006, the Warren County Grand Jury returned an indictment charging Lloyd with murder in violation of R.C. 2903.02(A), an unclassified felony, with an accompanying firearm specification.  The charges arose after Lloyd fatally shot David Richardson ("Richardson") with his Smith & Wesson nine-millimeter semi-automatic handgun on the afternoon of Wednesday, November 1, 2006.  It is undisputed that the shooting occurred at Lloyd's residence.  Following his arraignment, Lloyd pled not guilty and waived his right to a jury trial.  The matter was then tried to the bench, during which the trial court was presented with extensive testimony and evidence regarding Richardson's murder.  This includes lengthy testimony from Lloyd, who described the events leading up to Richardson's murder as follows.

{¶ 3}   Lloyd and Richardson had known each other since childhood.  In the summer of 2006, Lloyd asked Richardson, who was having marital and financial difficulties, to move in with him and his family.  Richardson had been a boxer, a bodyguard, and a bouncer, and according to Lloyd, would brag about beating up people.  Richardson, who was wanted for nonpayment of child support, was also known to carry a .45 handgun with him.  During that summer, Lloyd and Richardson practiced target shooting together on Lloyd's property.

{¶ 4}   As the summer transitioned into fall, Lloyd noticed that Richardson's behavior began to change.  Specifically, according to Lloyd, Richardson became moody, "dark," and more distant, took off more and more, used the house as a "weigh station," and would have angry conversations on his cell phone.  Suspecting Richardson may be using drugs, Lloyd talked to Richardson, who acknowledged that he had a drug problem.

{¶ 5}   On the evening of Sunday, October 29, 2006, Lloyd came home to find his intoxicated wife "passed out" on the couch with her hair draped over Richardson's lap.  Asked what was going on, Richardson either smiled or laughed at Lloyd with a guilty look

in his eyes.[1] Lloyd, upon putting his wife to bed, then confronted Richardson with a telephone in one hand and a shotgun in the other and ordered Richardson to leave his house and never come back. According to Lloyd, Richardson complied with this request, but was not at all happy about it.

{¶ 6} Between the evening of Sunday, October 29, 2006 and the day of the shooting, Wednesday, November 1, 2006, Lloyd and Richardson exchanged several phone calls. According to Lloyd, the phone calls between himself and Richardson on Sunday were hot and heated on both sides, with Richardson threatening Lloyd and his family with physical harm. However, by Monday and Tuesday, Lloyd claimed the calls between him and Richardson had cooled. Unfortunately, the calls again intensified on Wednesday when Richardson threatened physical harm to Lloyd and his family. According to Lloyd, Richardson also threatened to burn down his house. Seemingly terrified of Richardson and what Richardson might do to him and his family, Lloyd testified that he retrieved his handgun, but did not call the police. When Richardson called back a short time later, Lloyd and Richardson agreed to have Richardson's father, Ova Richardson ("Ova"), come to Lloyd's house to retrieve Richardson's belongings.

{¶ 7} Shortly thereafter, Lloyd testified that he saw Ova drive his truck up his driveway and park in the back of the house. Seated next to Ova in the truck was Richardson.[2] Expecting a beating from Richardson, Lloyd tucked his handgun in his back pocket, told his wife to stay in the living room, and went into the dining room. The dining room, which is on the side of the house, can be entered from the outside through a porch and a wooden door and its screen door.

---

1. The record indicates that the next morning, Lloyd's wife was heard crying in the shower complaining that she had semen in her hair.

2. The record indicates that Ova's three-year-old granddaughter was also in the truck with Richardson.

- 3 -

{¶ 8} After Ova parked his truck, Lloyd yelled at Richardson to leave the property. Instead of leaving, however, Richardson opened the screen door and started pounding on the wooden door. According to Lloyd, Richardson then slapped at the door lock with his palm, thus causing the door to fly open. Richardson then came at Lloyd "at a full rush," angry, and threatening to kill him. In response to Richardson entering the house, Lloyd twice shot Richardson who then spun around and jumped back out of the wooden door and onto the porch. Already being shot twice, Lloyd testified that Richardson then lunged at him, thus causing Lloyd to shoot Richardson one final time. Lloyd then closed both the screen door and the wooden door and told his wife to call 9-1-1. Although the police and the paramedics were on the scene very quickly, Richardson was already dead with two gunshot wounds to the chest and one to the abdomen.

{¶ 9} Throughout his testimony, Lloyd claimed that he had acted in self-defense, explaining that he never intended to kill Richardson, but that he had no other choice but to shoot Richardson to protect himself and his family. The trial court, however, rejected Lloyd's self-defense claim and instead returned a verdict finding Lloyd guilty as charged. The trial court then sentenced Lloyd to serve a total aggregate term of 18 years in prison. This court subsequently affirmed Lloyd's conviction and sentence on direct appeal, *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, and the Ohio Supreme Court declined review. *State v. Lloyd*, 120 Ohio St.3d 1454, 2008-Ohio-6813.

**Postconviction Facts and Procedural History**

{¶ 10} On January 16, 2008, while his direct appeal was still pending before this court, Lloyd filed a petition for postconviction relief. Although represented by counsel, Lloyd's petition raised many of the same issues as part of his then pending direct appeal. On July 29, 2008, the trial court denied Lloyd's petition without a hearing. Lloyd did not appeal from the trial court's decision.

- 4 -

{¶ 11} On January 4, 2010, approximately 18 months after this court's decision affirming Lloyd's conviction and sentence on direct appeal, Lloyd filed a motion with this court requesting his appeal be reopened pursuant to App.R. 26(B). Pursuant to App.R. 26(B)(1), an application for reopening must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." On April 7, 2010, this court denied Lloyd's motion to reopen his appeal after finding he had "failed to show good cause as to why his application was not filed in a timely manner[.]" *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053 (April 7, 2010) (Entry Denying Application for Reopening). Lloyd then appealed to the Ohio Supreme Court, which again declined review. *State v. Lloyd*, 128 Ohio St.3d 1414, 2011-Ohio-828.

{¶ 12} On March 12, 2010, while his application to reopen his appeal was still pending before this court, Lloyd filed a petition for a writ of habeas corpus with the United States District Court for the Southern District of Ohio. *Lloyd v. Warden, Ross Correctional Inst.*, S.D.Ohio No. 1:10-CV-169, 2012 WL 70619. As part of his petition, Lloyd alleged that he received ineffective assistance of appellate counsel. Lloyd also alleged that he was denied a fair trial because the trial court applied "the wrong law regarding material aspects of the case[.]" *Id.* at *2. The District Court denied Lloyd's petition finding he committed procedural defaults in bringing his petition, as well as a waiver of his claims. *Id.* at *6. The District Court also noted that it did "not find a colorable claim of actual innocence such that there is a basis to excuse [his] procedural defaults." *Id.* at *7.

{¶ 13} On September 19, 2012, Lloyd moved for leave to file a motion for a new trial based on alleged newly discovered evidence under Crim.R. 33. As part of this motion, Lloyd argued that he recently discovered new evidence regarding Richardson's violent past. According to Lloyd, this alleged new evidence supported a claim of self-defense and proves that he was justifiably afraid of Richardson at the time of the shooting. The trial court denied

- 5 -

Lloyd's motion in an entry filed October 24, 2012. In so holding, the trial court stated the following:

> The specific instances of the victim's violence that Defendant Lloyd claims are 'new' are not, in fact, new. Defendant Lloyd had every opportunity to present to the court specific instances of violence that made him fear his victim, in support of his self-defense claim. Additionally, the fact that the defendant has now, five years later, uncovered reasons to fear his victim cannot support his claim of acting out of fear and self-defense at the time of the murder.

{¶ 14} On November 29, 2012, Lloyd appealed from the trial court's decision overruling his motion. However, finding his notice of appeal untimely, this court dismissed Lloyd's appeal on December 19, 2012. *State v. Lloyd*, 12th Dist. Warren No. CA2012-11-123 (Dec. 18, 2012) (Judgment Entry of Dismissal). Lloyd then filed a motion for reconsideration, which this court denied. *State v. Lloyd*, 12th Dist. Warren No. CA2012-11-123 (Feb. 5, 2013) (Entry Denying Motion for Reconsideration).

{¶ 15} On June 19, 2013, Lloyd moved the trial court to correct his "illegal sentence" and allow him to "present additional clear errors under criminal rule 52," which, when taken together, rendered his conviction and sentence void. The trial court, properly construing Lloyd's motion as a second, successive petition for postconviction relief, denied Lloyd's motion on August 23, 2013. In so holding, the trial court stated:

> [Lloyd] wants to present evidence that the victim was an evil person but admits in his own motion that he was unaware of these other specific incidents both at the time of the shooting and at the time of the trial. Therefore, the Court can conceive of no way in which these prior bad acts would bolster his claim of self-defense. [Lloyd] was allowed to testify as to his fear of the victim and as to the events leading up to culminating in the shooting of the victim.

{¶ 16} Lloyd then appealed from the trial court's decision, which this court denied. *State v. Lloyd*, 12th Dist. Warren No. CA2013-09-080 (Mar. 24, 2014) (Accelerated Calendar Judgment Entry). Lloyd then appealed to the Ohio Supreme Court, which once

again denied review. *State v. Lloyd*, 139 Ohio St.3d 1482, 2014-Ohio-3195.

{¶ 17} On November 4, 2014, the Fourth District Court of Appeals affirmed the decision of the Ross County Court of Common Pleas dismissing Lloyd's petition seeking a writ of habeas corpus, wherein Lloyd claimed his conviction and sentence were illegal because he was indicted based on the unlawful testimony of his wife during the grand jury proceedings. *Lloyd v. Robinson*, 4th Dist. Ross No. 14CA3452, 2014-Ohio-4977. Shortly thereafter, on March 31, 2015, the Fourth District Court of Appeals affirmed the decision of the Ross County Court of Common Pleas dismissing Lloyd's second, successive petition seeking a writ of habeas corpus, wherein Lloyd claimed his conviction was unlawful and against the manifest weight of the evidence because of judicial misconduct, prosecutorial misconduct, and the ineffective assistance of trial counsel. *Lloyd v. Robinson*, 4th Dist. Ross No. 14CA3462, 2015-Ohio-1331. The Ohio Supreme Court denied review of both decisions. *Lloyd v. Robinson*, 142 Ohio St.3d 1450, 2015-Ohio-1591; and *Lloyd v. Robinson*, 143 Ohio St.3d 1419, 2015-Ohio-2911.

{¶ 18} On April 6, 2015, Lloyd filed a motion for re-sentencing alleging his sentence was void, wherein he challenged the trial court's order requiring him to pay restitution, court costs, and other fees. Three days later, on April 9, 2015, the trial court issued a decision vacating its order requiring Lloyd to pay court costs, court-appointed counsel fees, and other fees upon finding it had "declined to find [Lloyd] has or is reasonably expected to have the means to pay the financial sanctions * * *." The trial court's decision, however, did not make any reference to its prior order requiring Lloyd to pay restitution.

{¶ 19} Lloyd then appealed from the trial court's decision arguing the trial court erred by not also vacating the trial court's order requiring him to pay restitution. This court agreed upon finding the trial court "acknowledged that it did not intend to order Lloyd to pay any financial sanctions," including any order of restitution. *State v. Lloyd*, 12th Dist. Warren No.

- 7 -

CA2015-05-038, 2015-Ohio-3636, ¶ 9. This court, therefore, vacated the trial court's order requiring Lloyd to pay restitution. Apparently not satisfied with this court's decision, Lloyd appealed to the Ohio Supreme Court, which again denied review. *State v. Lloyd*, 146 Ohio St.3d 1427, 2016-Ohio-4606.

{¶ 20} On October 15, 2015, Lloyd filed another motion for re-sentencing alleging his sentence was void, wherein he challenged the trial court's imposition of a mandatory five-year term of postrelease control. The state, acknowledging that a defendant's conviction of murder is not subject to postrelease control, agreed that the trial court erred by advising Lloyd he would be subject to a mandatory five-year postrelease control term if he were ever released from prison. As a result, on December 16, 2015, the trial court issued a decision ordering "any reference to post-release control be deleted from the sentencing entry."

{¶ 21} On May 18, 2017, Lloyd moved the trial court to issue an amended sentencing entry that properly "memorialize[d] the sentence in one single document for compliance of Ohio Law." Thereafter, on June 28, 2017, the trial court issued an amended and corrected judgment entry of sentence that contained no references to restitution, court costs, fees, or postrelease control. Lloyd then appealed from the trial court's amended and corrected judgment entry of sentence, raising the following five assignments of error for review.

{¶ 22} Assignment of Error No. 1:

{¶ 23} THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN IGNORING THE RIGHT TO SELF-DEFENSE.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE COURT COMMITTED PREJUDICIAL ERROR IN IGNORING THE CASTLE DOCTRINE.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN ALLOWING

PROSECUTORIAL MISCONDUCT.

{¶ 28} Assignment of Error No. 4:

{¶ 29} APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 30} Assignment of Error No. 5:

{¶ 31} APPELLANT WAS DEPRIVED OF A FAIR AND IMPARTIAL TRIAL.

**Analysis**

{¶ 32} In his five assignments of error, Lloyd challenges many aspects of his bench trial from which the trial court found him guilty of murder with an attendant firearm specification. In support, Lloyd claims the trial court erred by not finding he had acted in self-defense and by not applying the "castle doctrine" to the case at bar. Lloyd also claims his conviction must be reversed due to alleged prosecutorial misconduct and ineffective assistance of trial counsel, both of which resulted in him being deprived of a fair and impartial trial. Lloyd's claims, however, are all barred by the doctrine of res judicata since he could have, and in most cases actually did, raise these issues as part of his direct appeal and subsequent motions and petitions before the trial court.

{¶ 33} As this court has stated previously, the doctrine of res judicata provides that "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or an appeal from the judgment." *State v. Wagers*, 12th Dist. Preble No. CA2011-08-007, 2012-Ohio-2258, ¶ 10, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 1996-Ohio-337 (1996). Res judicata, however, does not apply to a void sentence for a void sentence may be reviewed at any time. *State v. Vancleve*, 12th Dist. Clermont No. CA2016-06-039, 2016-Ohio-7546, ¶ 15.

{¶ 34} After a thorough review of the record, we find no error in the trial court's handling of this matter that would render Lloyd's conviction or sentence void. The doctrine of res judicata, therefore, is clearly applicable to the case at bar. In so holding, we note that Lloyd appealed from the trial court's amended and corrected judgment entry of sentence. As the record plainly reveals, that entry merely removed references to restitution, court costs, fees, and postrelease control in accordance with this and the trial court's various rulings. As noted by the state, and with which we agree, such an entry does not provide Lloyd with the unfettered opportunity to challenge any error that he believes may have occurred prior to trial, during trial, or post trial. Rather, as noted by the Ohio Supreme Court, although the doctrine of res judicata does not preclude review of a void sentence, "res judicata still applies to other aspects of the merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 40. Lloyd's claim otherwise lacks merit.

## Conclusion

{¶ 35} In light of the foregoing, because the doctrine of res judicata clearly applies to the case at bar, Lloyd's five assignments of error are without merit and overruled.

{¶ 36} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.